## HEALEY et al. v. WIPF, Secretary of State.

The primary election law (Laws 1907, p. 286, c. 139, § 3), declares that thereafter all party candidates for the elective offices

named, and for the office of United States senator, shall be nominated, and all party delegates to political conventions, and all precinct, county, state and national committeemen shall be nominated and elected at a primary election held in accordance with the provisions of this act; that all other nominations of such candidates shall be by petition in the manner provided by law. Section 6, subd. 1, provides that the name of no candidate for United States senator, nor of any candidate for member of Congress, nor for any state office, including judges of the circuit court, shall be printed on any official ballot used at a primary election, unless the nominating petition in the form prescribed shall have been filed in the office of the Secretary of State. **Held**, that such act prescribed the exclusive mode of nominating party candidates for the offices specified therein.

The primary election law (Laws 1907, p. 285, c. 139), though construed as prescribing an exclusive mode of nominating candidates for offices mentioned therein, is not unconstitutional as an improper infringement on an elective franchise, such franchise being a mere privilege, and not a natural right, which the Legislature may regulate to any extent not prohibited by the federal and state Constitutions.

(Opinion filed, Sept. 2, 1908.)

Mandamus by William Healey and others to compel D .D. Wipf, as Secretary of State, to receive and file certain nomination certificates of Democratic candidates and to certify their names to the auditors of the several counties, that such names may be printed on the official ballots to be voted at the November, 1908, general election. Writ dismissed.

*W. A. Lynch* and *T. H. Null,* for plaintiffs. *S. W. Clark, Attorney General,* for defendant.

HANEY, P. J. This original special proceeding was instituted to compel the defendant, as Secretary of State, to receive and file nomination certificates of certain Democratic party candidates, and to certify the names of such candidates to the auditors of the several counties for the purpose of having them printed on the official ballots to be voted at the coming general election, in accordance ,with the provisions of article 6, c. 19, Rev. Pol. Code. It appears from the application that the Democratic Party is an organized political party that has participated in state, county, township, and municipal elections for 12 years last past, during which time it has regularly. presented to the electors of this state its party candidates to be voted for at such elections; that it participated

in the June, 1908, primary election, electing delegates to its state convention, members of its state committee, a national committeeman and precinct committeemen, in the manner provided by the primary election law, and likewise nominated a candidate for Governor and a candidate for Lieutenant Governor, but the electors composing its membership wholly failed and neglected to file any nominating petitions for any of the following state officers: Secretary of State, Auditor, Treasurer, Superintendent of Public Instruction, Railway Commissioner, Commissioner of School and Public Lands, and Attorney General, consequently no candidates of that party for the offices named were voted for or nominated at the June primary; that the delegates elected as aforesaid assembled at Rapid City, July 14, 1908, and proceeded to organize a state convention by the election of Hon. P. F. Wickham as presiding officer and Mr. T. W. Taubman, as secretary; that such convention so organized proceeded to and did nominate candidates for the offices before named; that a certificate showing the nomination of such candidates, signed by the aforesaid presiding officer and secretary, conforming to the requirements of article 6, c. 19, Rev. Pol. Code, was presented to the defendant, as Secretary of State, who refused to receive and file the same. It further appears from the application that the Democratic state central committee, treating the official positions before named as vacant, met at Mitchell on August 4th, and proceeded to fill such assumed vacancies by naming the same persons as candidates, that certificates showing the action of the committee were presented to the defendant, as Secretary of State, who refused to receive and file the same, and that the plaintiffs are the persons so nominated by the state convention and state central committee. To this application defendant demurred on the following grounds: (1) The plaintiffs have no legal capacity to sue in this form of action; (2) there is a defect of parties in that the state is not made a party by one of its officers, by the Attorney General or by relation of the plaintiffs; and (3) the application does not state facts sufficient to constitute a cause of action or to justify this court in issuing the writ prayed for.

As we understand the argument of counsel it is contended (1) that the Primary Election Law (Laws 1907, p. 285, c. 139) should

not be considered as prescribing an exclusive mode of nominating party candidates for the offices mentioned in the application; and (2) that, if it should be so considered, it is unconstitutional and void. The first contention is clearly untenable. Section 3 reads as follows: "Hereafter all party candidates for the elective officers hereinafter named, and for the office of United States senator, shall be nominated, and all party delegates to political conventions, and all precinct, county, state, and national committeemen shall be nominated and elected at a primary election held in accordance with the provisions of this act. All other nominations of such candidates shall be by petition in the manner now provided by law." Section 6, subd. 1, declares: "The name of no candidate for United States senator, nor of any candidate for member of Congress, nor for any state office including judges of the circuit court," shall be printed upon any official ballot used at the primary election unless a nominating petition in the form prescribed shall have been filed in the office of the Secretary of State. The phrase "any state office" in section 6 must be read in connection with and be qualified by the words "elective officers" in section 3. Each of the officers involved in this proceeding is mentioned in section 8, relating to fees, and in section 11, relating to the form of the official primary ballot. Sections 61, 69, and 72 contain these provisions: "Any candidate for nomination whose name is printed upon any official primary election ballot who receives the highest number of votes cast by the voters of his party for any candidate for nomination to the office for which he is a candidate, and not less than thirty per cent. of the total vote cast in his party for all the candidates for nomination to such office at the primary election shall be the nominee of his party for such office, and any candidate for national, state, or precinct committeeman who receives the highest number of votes cast for any candidate for election to the position for which he is a candidate shall be duly elected to such position. In all cases where no candidate receives as high as thirty per cent of the total vote cast by the voters in his party for all the candidates for the same office for which he is a candidate, no nomination shall result, but such candidates shall submit to the decision of the following state or county convention, as the case may be. Such

convention must decide among the candidates whose names were
submitted to the voters at the primary and cannot consider new
candidates.   The convention shall nominate one of the contesting
candidates and certify his nomination to the Secretary of State or
to the county auditor as provided under existing laws.   All county
conventions held under the provisions of section 12 of this act shall
have authority, in addition to that of making nominations in cases
where no candidate for county office before the primary received
thirty per cent. of the vote, to fill vacancies caused by the failure
of candidates to file nominating petitions or by withdrawals, death,
or any other reason, and to pass party resolutions.   If for any rea-
son after a nomination as a party candidate for an elective office
has been made or a party committeeman elected, as provided in this
act, a vacancy shall occur, the state or county committee of the
political party, as the case may be, in which the vacancy occurs is
hereby authorized to fill the same."   Consideration of these ex-
cerpts and of the act as a whole irresistibly leads to these conclu-
sions: (1) That it was the intent of the Legislature to prescribe a
mandatory method of making party nominations to all elective state
offices, including judges of the circuit court; (2) that such method
does not permit the nomination of party candidates to either of
such offices by the state convention, except where no candidate has
received the requisite vote at the primary; and (3) that such
method permits the state central committee to nominate only where
a vacancy occurs after a candidate has been nominated at the pri-
mary.   It necessarily follows that the plaintiffs are not entitled to
have their names printed on the ballots to be voted at the coming
general election, as candidates of the Democratic Party, unless the
Legislature was without power to establish any compulsory primary
system whatever.

Though numerous particular provisions of statutes relating to
primary elections have been attacked in the courts as unconstitu-
tional or subversive of inherent rights, we are aware of no decision
wherein it is held that the Legislature is without power to pre-
scribe any mandatory rule whatever for the regulation of party pro-
cedure so far as it concerns nominations to public offices.   On the
contrary, all the decisions we have examined either declare or as-

sume that, where the Australian ballot system is in force, as it is in this state, the relation between the nomination and election of a public officer is such as to imperatively demand legislation respecting party nominations, and any legislation on the subject will necessarily interfere with the customs and usages of organized political parties. As said by the Supreme Court of California, "the procedure of political parties may be regulated, and the wisdom of the Legislature may well be exercised in devising methods to check political corruption and fraud." Britton v. Board, 129 Cal. 337, 61 Pac. 1115, 51 L. R. A. 115. This court has said: "To what extent, if at all, the rights of organized political parties should be recognized and regulated by law is a matter of public policy, to be determined by the legislative department; a matter which does not concern this court. Its duty is done when it gives effect to the legislative will expressed in statutes which do not conflict with any provision of the federal or state Constitution." State v. Metcalf, 18 S. D. 393, 100 N. W. 923, 67 L. R. A. 331; Morrow v. Wipf, 22 S. D. 146, 115 N. W. 1121. In considering legislation relating to the regulation of party nominations great care should be taken to discriminate between preconceived notions regarding the wisdom of such regulations and the application of constitutional limitations upon the legislative power. The elective franchise is not a natural right. It is a privilege which may be taken away by the power which conferred it; and the only limitations upon the power of the Legislature to regulate its exercise and enjoyment are the express and implied limitations found in the federal and state Constitutions. So far as this controversy is concerned, the essential feature consists in the right of each qualified elector to express, and have due effect given to, his individual choice of such elective political officers as control the affairs in which he is interested. Thus, every qualified elector in the state should have an opportunity to express his choice of elective state officers; every qualified elector of the county should have an opportunity to express his choice of elective county officers; every qualified elector in each local subdivision should have the same opportunity, and he cannot be deprived of this opportunity by unconstitutional restrictions upon his right to participate in the selection

of candidates, whenever a nomination is legally or practically a condition precedent to an election. Where the electorate is limited, as to the voters of a civil township or school district, an effective expression of individual prefernces may be promoted by the absence of legislative regulations respecting methods of procedure. Where, however, as in the case of the selection of a state officer, the number of electors is large, the problem becomes vastly more complicated, and laws regulating the exercise of the elective franchise are absolutely essential to an effective enjoyment of the privilege. Much was said in the oral argument about the inherent rights of organized political parties, as if such an organization possessed an entity independendent of the individual electors composing its membership. In a restricted sense only is this true. We are dealing with the rights of the individual electors belonging to the Democratic Party in this state, not with the rights of an artificial person known by that name, because, strictly speaking, no such person or entity exists. Theoretically a party candidate is the choice of the majority of the electors composing the party. This choice may be ascertained by means of a primary election, a mass convention, a delegate convention, or the action of an authorized committee. With the relative merits of these methods this court is not concerned, however pronounced may be the individual opinion of its members. The question to be determined is whether the Legislature has power to require the use of one to the exclusion of others in making party nominations to elective state offices. Had the statute required such nominations to be made by a delegate convention, and the Democratic organization had employed a primary election, its nominees might have objected to the invasion of its supposed rights with a far more plausible argument than the plaintiffs have presented in this case. The truth is, their entire argument rests on the erroneous assumption that the party, as a distinct entity, has an absolute right to follow any mode of procedure deemed advisable by the person or persons having control of the party machinery, whereas the will of any voluntary association is the will of the majority of its members, and the only constitutional right involved is the right of each individual elector composing such majority to exercise and enjoy the elective fran-

chise in the same manner and upon the same terms as all other electors in substantially the same situation, provided, of course, that the legislative regulation does not substantially interfere with the exercise and enjoyment of such franchise. As to state elections under the Australian system, there must be regulation, and it certainly cannot be successfully contended that the rights of the individual elector are impaired by substituting a direct primary, conducted at public expense, according to established rules, for the methods formally employed by political parties in this state. Under this statute the elector's rights are clearly defined and clothed with the sanctions of positive law, while in the absence of any legislation on the subject he would have no enforceable rights whatever with respect to party nominations. In the language of Chief Justice Parker, speaking for the New York Court of Appeals, concerning legislation of substantially the same import: "The dominant idea pervading the entire statute is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot, and thus given effect, whether it be in accord with the wishes of the leaders of his party or not, and that thus shall be put in effective operation in the primaries the underlying principle of democracy, which makes the will of an unfettered majority controlling. In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards." People v. Democratic Gen. Com. of Kings Co., 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674.

So we conclude that plaintiff's contention as to the invalidity of the statute is not tenable, that plaintiffs are not entitled to have their names printed on the general election ballots as candidates of the Democratic Party, and that defendant is entitled to a judgment of dismissal upon the merits.

FULLER, J., taking no part in this decision.