THE STATE ex rel. WILBUR F. MARING v. JOHN E. SWANGER, Secretary of State.

In Banc, May 20, 1908.

1. **PRIMARY ELECTIONS: Petitions: Sufficiency of Affidavit.**
The affidavit attached to nomination papers or petitions required by the statute to be filed with the Secretary of State in behalf of candidates for State offices, in order that their names may be officially printed on the party tickets to be voted upon at the primary election, is sufficient if it substantially complies with the statutory requirements. So that, although the statute requires that, among other things, the affiant shall state that he knows "the respective residences" of the signers "are stated" in the petition, and those words are omitted from the affidavit, yet if the affiant states that the signers are qualified electors of the county, it is sufficient; for one who is a qualified elector of the county is by necessary implication a resident of the county.

2. ————: ————: ————: **Construction of Statute.** The directory provisions of a statute should be so construed as to give force to its beneficent life and purpose.

3. ————: ————: ————: ————: **Substantial Compliance.** A substantial compliance with any directory statute is sufficient—especially where the statute itself indicates that all that is required is a substantial compliance therewith.

4. ——: ——: ——: ——: **Prescribed Form.** Although the Primary Election Statute prescribes a form of affidavit to be appended to a nomination paper, yet as it also prescribes a form of nomination paper and ordains that such paper shall "substantially" follow the prescribed form, the paper will be held to include the affidavit as a part of it, since the statute says that the affidavit shall be appended to, that is, made a part of, the paper. The statute, therefore, means that the affidavit, as well as the rest of the paper, shall substantially follow the prescribed form.

5. ——: ——: ——: **Purpose of the Affidavit.** The purpose of the statute in requiring an affidavit to be appended to the nomination paper was to authenticate the paper as a genuine document executed for the purposes of the law.

6. ——: ——: ——: **Residence.** The statute does not require that the affidavit state the postoffice address of the signers of a nomination paper; it simply says that the affiant shall state, among other things, that "their respective residences are stated therein." And where the respective residence of each voter is stated opposite his name or signature on the nomination paper, and the affiant states that he "knows them each and all to be qualified electors" of the county, the Secretary of State can see by the nomination paper itself what the residences of the signers are, and no beneficial purpose would have been conserved had the affidavit stated that "their respective residences are stated therein."

7. ——: ——: ——: **Reading in "As."** The statute does not say that the affidavit shall state "their respective residences are as stated" in the nomination paper. If it had done so a different question might arise. But as the word "as" is not in the law, the court will not read it in.

8. ——: ——: ——: **Mandamus As a Remedy.** Mandamus is a proper remedy to compel the Secretary of State to file and accept a nomination paper that is in substantial compliance with the statute. .

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Perry S. Rader* for relator.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for respondent.

## STATEMENT BY THE REPORTER.

This is a suit by mandamus, brought in this court, to compel the Secretary of State to file two nomination papers in behalf of the relator, who is a candidate for the Republican nomination for State Treasurer.

The petition was presented in open court on May 19th, and the Attorney-General, who appeared for respondent, waived the issuance of the writ, and agreed that the petition might be considered as and for the writ.

The petition is accompanied by two papers headed, "Petition for Nomination." One of these papers begins with these words: "I, the undersigned, a qualified elector in and for the county of Nodaway and the State of Missouri, and a member of the Republican party, hereby nominate Wilbur F. Maring, who resides at Jefferson City in the county of Cole and the State of Missouri, as a candidate for the office of State Treasurer, to be voted for at the primary to be held on the first Tuesday of August, 1908, as representing the principles of said party, and I further declare that I intend to support the candidate herein named." Then under the column headed with the word "Name" are twenty-six different names written with pencil, and opposite each name in the column headed "Residence" are the words "Burlington Junction," and in the next column headed "Date" are "May 12, 1908," opposite each name.

At the end of this paper is an affidavit in these words:

"STATE OF MISSOURI, ⎫
"County of Nodaway. ⎬ ss.
　　　　　　　　　　⎭

"On this the 14 day of May, 1908, personally appeared before me, John H. Bryant, a duly qualified elector, who being duly sworn, upon his oath states that he is personally acquainted with all the persons

who have signed the foregoing petition, and knows them, each and all, to be qualified electors of Nodaway county, Missouri; that he knows that they signed the same with full knowledge of the contents thereof, and that each of the above-named petitioners signed the same on the date set opposite his name, and that he, the affiant, intends to support the candidate named therein.'' Then follows the signature of John H. Bryant, and the certificate and seal of a notary public.

The other paper attached to the petition was in all respects the same as the above except it purports to come from Benton county and was signed on different dates in January, 1908, by twenty-five persons whose ''residence'' is stated opposite their names to be Warsaw.

The petition charges that relator presented these petitions to the respondent on May 16, 1908, and asked that they be filed and accepted as valid nomination papers, but that respondent refused to file them or permit them to be filed for the sole reason that the words, ''and that their respective residences are therein stated,'' were omitted from the affidavit, which words the statute says are to be stated in the affidavit. It is admitted by the Attorney-General, who filed a demurrer to the petition, assigning as grounds therefor that it fails to state a cause of action, that if the omission of these words from the affidavits do not invalidate the nomination papers, they are valid and binding. It, therefore, is unnecessary to set out the allegations of the petition. It is not charged or claimed that the words ''and that their respective residences are stated therein,'' were intentionally omitted from the affidavits, but it is admitted by both relator and respondent that their omission was at most an oversight. The point for decision, therefore, is purely one of law, and is, Did the omission of

these words, which the statute says shall be stated in the affidavit, invalidate the nomination papers?

The sections of the statute bearing on the point at issue are these:

"Sec. 1. Hereafter all candidates for elective offices shall be nominated by a primary held in accordance with this act. . . . .

"Sec. 5. The name of no candidate shall be printed upon an official ballot used at any primary unless at least sixty days prior to such primary a nomination paper shall have been filed in his behalf, as provided in this act, in substantially the following form." Then follows the form copied above from the petition from Nodaway county.

"Sec. 6. All nomination papers except for county officers shall have substantially the above form written or printed at the top thereof.

"Sec. 8. For State officers, all signers on each separate nomination paper shall reside in the county. The affidavit of a qualified elector shall be appended to each such nomination paper, stating that he is personally acquainted with all persons who have signed the same, and that he knows them to be electors of that precinct or county as the nomination papers shall require; that he knows that they signed the same with full knowledge thereof, and that their respective residences are stated therein, and that each signer signed the same on the date stated opposite his name, and that he, the affiant, intends to support the candidate named therein. . . . .

"Sec. 9. Such nomination papers shall be signed: (a) If for a State office, by at least one per cent of the voters of the party of such candidate, in at least each of six counties in the State, and in the aggregate not less than one per cent nor more than ten per cent of the total vote of his party in the State. . . . .

"Sec. 11. All nomination papers shall be filed as

follows: 1. For State officers . . . . in the office of the Secretary of State. . . . .

"Sec. 15. An official ballot shall be printed and provided for use at each primary precinct in the form provided herein. The names of all candidates for the respective offices, for whom the nomination papers prescribed shall have been duly filed, shall be printed thereon.

"Sec. 30. It shall be the duty of the Secretary of State, on or before March 1, 1908, to prepare all forms necessary to carry out the provisions of this act, which forms shall be substantially followed in all primaries held in pursuance thereof. Such forms shall be printed with copies of this act for public use and distribution."

## OPINION BY THE COURT.

PER CURIAM.—The blunt and single question is this:

Is the omission of the statutory words, "that their respective residences are stated therein," from the affidavits of the qualified electors appended to two certain nomination papers, nominating Mr. Maring as a candidate for the office of State Treasurer, fatal to their filing—the nomination papers and the appended affidavits being otherwise confessedly in strict compliance with the State Primary Act?

We are of opinion (VALLIANT, J., absent and GRAVES, J., not sitting) that the omission is not fatal to the filing of such nomination papers, as one step towards getting on the official ballot, and that the final writ of mandamus should go.

This, because:

(a) Broadly, the State Primary Act being highly remedial and not in contravention of the common law, under canonized rules of construction its provisions

should be liberally construed to further and give force to its beneficent life and purpose in advancing the remedy provided and retarding the mischief struck at. The rigor of very strict compliance with the *minutiae* of directory provisions (such as this) of the Primary Act is not to be exacted at the hands of the plain citizens unskilled in technical precision who are called upon to initiate action under the primary law, unless vehement call is made therefor by the act. The mind of the judicial interpreter of such a law must not be narrow and on the *qui vive* for flaws or it will stumble; and, absent the oil of common-sense construction, the new and untried machinery of the law will break down and its technical burdens prove its utter undoing. Many instances readily recur of the application of the doctrine of the sufficiency of substantial compliance as against very strict compliance. Thus (*e. g.*), the statute prescribes a form for acknowledgment of deeds. In construing that statute it has been steadily held that a substantial compliance is well enough. [See authorities collated by the learned annotator of Mo. Ann. Stat., p. 842, *et seq.*] The same doctrine is applied in determining the sufficiency of the returns of constables on writs (Ables v. Webb, 186 Mo. l. c. 246); in determining the sufficiency of an affidavit for appeal (State ex rel. v. Broaddus *et al.*, Judges, 210 Mo. 1); and, closer to the point, in interpreting those provisions of an election law not made mandatory by the clear reason or words of the statute (Sanders v. Lacks, 142 Mo. l. c. 262, *et seq.*). That the Legislature held this doctrine in mind, witness the act itself. Thus, section 5 prescribes a form for a nomination paper and ordains that such paper shall "*substantially*" follow the form laid down. Section 8 provides that "the affidavit of a qualified elector shall be *appended* to each nomination paper," *i. e.*, should become a part of the paper. This being so, the statutory birthright of *sub-*

*stantial* compliance granted to the form of the nomination paper may well be held to run with the affidavit, by express legislative sanction. Now, a rule of construction the Legislature has said is good for the one (the paper, itself), shall the courts say is bad for the other (an incident to the paper)? That such legislative benediction, the grace of substantial compliance; should be made as broad and efficacious as may be by judicial construction, goes as of course.

(b) Obviously, the office of the statutory affidavit was not so much to furnish a clue for the detection of fraud in the preparation of a nomination paper, as to authenticate the document itself—make it go, pass current, as it were, with the Secretary of State as a genuine paper, executed for the purposes of the law and entitled to his official *vise* for filing and counting. Observe, the statute does not say the correct postoffice address of the signer shall be given in the paper nor as part of the affidavit. It says his *residence* shall be given—quite another thing; for A may reside at B and get his mail at C. "Residence" goes to his right to sign; for the law provides that "for State officers, all signers on each separate nomination paper shall reside in the same county." If the Legislature had intended the postoffice addresses of the signers should be given so that their identity on a pinch might be run down and established by the use of the United States mail, it was very lame in not saying so outright. It stops quite short of that. The statute pointing to the residence of the signers, when the affidavits in question certify that the several affiants knew the signers to be "qualified electors of the county" (which fact includes by necessary implication residence therein), and knew that they signed the respective nomination papers "with full knowledge of the contents thereof" (which fact includes by necessary implication their knowledge that said papers gave their residences as in the coun-

ty), we think the fair purposes of the law were fully subserved. Indeed, what sensible legal purpose was to be gained by affiants also stating that the signers' respective residences "are stated therein?" They *were* "stated therein." The papers say so—*res ipsa loquitur*. Why state what the papers state when the official eye of the Secretary of State could see what they state, not through the glass of an affidavit, darkly, but face to face in the papers themselves, and when an affidavit containing the omitted words would furnish not a ray of light except a borrowed one? Let us suppose by way of hypothesis, as a *reductio ad absurdum*, that the nomination papers did not in fact give the residences, but, notwithstanding that omission, affiants had made affidavits that the residences "are stated therein," would the Secretary of State in the line of his duty look no further than the affidavits to ascertain the real fact? To so hold would be judicial nonsense. If, then, he must look to the papers to see the fact, what vital function does the mere signboard in the words omitted from the affidavit serve? None that we can see. And what says the maxim—the law forces no one to do vain or useless things (*Lex neminem cogit, etc.*)?

If the statute had ordained that affiant should state to his personal knowledge that the respective residences of the signers are *as* "stated therein," a different question might be here. Under such circumstances, the oath of affiant would serve a purpose in attesting his personal knowledge of the truth of the particular fact that the residences were truthfully stated, but the statute makes no such requirement and we will not go beyond the law by reading it in by construction.

We hold, then, that the pretermitted words are not of the essence of the thing—that the statute in that regard is essentially directory; and, so holding, we

conclude the omission not fatal to the validity of the nomination papers.

(c)   Mandamus seems the proper remedy. [State ex rel. Scott v. Dirckx, County Clerk, 211 Mo. 568; State ex rel. Rinder v. Goff, 129 Wis. 668.]

Let the final writ go.

All concur, except *Valliant, J.,* absent. and *Graves, J.,* not sitting.