W. L. LEDGERWOOD *et al. v.* JOHN A. PITTS *et al.*[1]

(*Nashville.*   December Term, 1909.)

1. **PRIMARY ELECTIONS.** Not "elections" in the sense of the suffrage and election provisions of the constitution, and laws therefor may be enacted.

The compulsory primary election law (Acts 1909, ch. 102), establishing legalized compulsory primary elections for political nominations, did not provide for "elections" within the meaning of the suffrage and election provisions of the constitution, and it was in the competency of the legislature to pass such an act, if not violative of other constitutional provisions. The primary election is simply a substitution for the caucus or convention, and in reality is not an election, but merely a nominating device.   (*Post, pp.* 586-601.)

Acts cited and construed:   Acts 1909, ch. 102.

Constitution cited and construed:   Art. 1, sec. 5; art. 4, sec. 1.

Cases cited and approved:   Hanna v. Young, 84 Md., 179; Kenneweg v. Allegany Co., 102 Md., 122; Montgomery v. Chelf, 118 Ky., 766; State, ex rel., v. Swanger, 212 Mo., 472; State, ex rel., v. Jensen, 86 Minn., 19; People v. Committee, 164 N. Y., 335; State v. Felton, 77 Ohio St., 554; State v. Michel, 121 La., 374.

Cases cited and disapproved:   Johnson v. Grand Forks Co., 16 N. D., 363; Spier v. Baker, 120 Cal., 370; State, ex rel., v. Canvassers, 78 S. C., 461; People v. Commissioners, 221 Ill., 9.

2. **SAME.** Same. Statutes may be enacted requiring nominations by primary, and prescribing additional qualifications for participants.

The legislature may require that nominations for elections shall be by primary, and may prescribe additional qualifications for the voters participating in the same.   (*Post, pp.* 594, 595.)

---

[1] As to "Primary Elections" as elections, within constitution or statute relating to elections generally, see note to Line v. Waite, (Mich.), 18 L. R. A. (N. S.), 412.

Ledgerwood v. Pitts.

Cases cited and approved:   Runge v. Anderson, 100 Wis., 533;
State, ex rel., v. Moore, 87 Minn., 308;  State v. Drexel, 74 Neb.,
776;  Hopper v. Stack, 69 N. J. Law, 562;  Coffee v. Committee,
164 N. Y., 335;  Healey v. Wipf (S. D.), 117 N. W., 521;  Griffin v.
Gesner, 78 Kan., 669;  Walling v. Lansdon, 15 Idaho, 282;  State
v. Nichols, 50 Wash., 508.

**3. SAME.  Statute excluding political parties casting less than
ten per cent of the entire vote is not unconstitutional for that
reason.**

The compulsory primary election law (Acts 1909, ch. 102) is not
unconstitutional, and is not violative of the constitutional in-
hibitions against special and partial laws, because its classifica-
tions are not unreasonable, arbitrary, or capricious, in that the
first section of the act excludes from its benefits political parties
casting less than ten per cent of the entire vote of the State at
the preceding general November election.   Such classification
and exclusion is not unreasonable, arbitrary, capricious, and par-
tial.   Such minor political parties are not prohibited from mak-
ing nominations in any manner deemed most expedient, and
the names of their candidates may be printed on the official bal-
lots voted in the general election.    (*Post, pp.* 601-604.)

Acts cited and construed:. Acts 1909, ch. 102, sec. 1.

Cases cited and approved:   Kenneweg v. Allegany Co., 102 Md.,
128;  State v. Poston, 58 Ohio St., 620;  Gentsch v. State, 71 Ohio
St., 151;  State v. Felton, 77 Ohio St., 572;  DeWalt v. Bartley, 146
Pa., 529;  State v. Black, 54 N. J. Law, 446;  State v. Anderson,
100 Wis., 523;  Miner v. Olin, 159 Mass., 487;  Corcoran v. Bennett,
20 R. I., 6;  Ladd v. Holmes, 40 Or., 167.

Cases cited and disapproved:   Spier v. Baker, 120 Cal., 370;  But-
ton v. Board, 129 Cal., 337.

**4. CONSTITUTIONAL LAW.  Statute for compulsory primary
elections for political nominations is not unconstitutional be-
cause it excludes the judiciary.**

The compulsory primary election law (Acts 1909, ch. 102), estab-
lishing compulsory primary elections for political nominations,

Ledgerwood v. Pitts.

is not unconstitutional because it excludes from its operation the judiciary, including the district attorneys as a part of the judiciary; for such classification is natural, reasonable, and valid, and is not arbitrary, capricious, or unreasonable. (*Post*, *pp*. 605-608.)

Acts cited and construed: Acts 1909, ch. 102, sec. 1.
Constitution cited and construed: Art. 1, sec. 8; art. 11, sec. 8.
Cases cited and approved: Stratton v. Morris, 5 Pickle, 497.

5. **SAME.** Same. Statute for compulsory primary elections excluding all the judicial officers except the county judges, is unconstitutional for its arbitrary classification.

The compulsory primary election law (Acts 1909, ch. 102), establishing compulsory primary elections for political nominations, and excluding from its operation the judiciary, except county judges, is unconstitutional, because the inclusion of the county judges and the exclusion of the other judicial officers constitutes an unreasonable, capricious, and arbitrary classification. (*Post*, *pp*. 605-608.)

Acts cited and construed: Acts 1909, ch. 102, sec. 1.
Constitution cited and construed: Art. 1, sec. 8, art. 11, sec. 8.

Cases cited and approved: State, ex rel., v. Glenn, 7 Heisk., 472; State v. McKee, 8 Lea, 24; State v. Leonard, 86 Tenn., 485; Stratton v. Morris, 89 Tenn., 497; State v. Maloney, 92 Tenn., 68; Johnson v. Brice, 112 Tenn., 59.

6. **SAME.** Act whose body provides for State conventions to select party presidential electors and delegates to national conventions, under its title providing for compulsory primary elections, is unconstitutional, because its body is broader than its title.

The compulsory primary election law (Acts 1909, ch. 102), entitled "An act to establish a compulsory system of legalized primary law for political nominations, to create the agencies for its operation, and penalize its violation," provides in its body an elaborate plan for the nomination of party candidates by compulsory primary elections, and also provides the agencies and

Ledgerwood v. Pitts.

instrumentalities for effectuating the system therein devised, all of which is proper and germane to the main object expressed in the title; but in section 9, the act provides for the holding of State conventions to select party presidential electors and delegates to national conventions, and to formulate platforms, and this provision for State conventions for the selection of such electors and delegates is not germane to the subject expressed in the title, and makes the body of the act broader than its title, and thus renders the act unconstitutional.    (*Post, pp.* 608, 609.)

Acts cited and construed:  Acts 1909, ch. 102, sec. 9.

Constitution cited and construed:  Art. 2, sec. 17.

Case cited and approved:  Dixon v. State, 117 Tenn., 81.

7. **SAME.  Compulsory primary election law requiring the payment of fees as a condition of becoming a candidate, is unconstitutional, because arbitrary, oppressive, and unreasonable.**
The compulsory primary election law (Acts 1909, ch. 102) is unconstitutional in the provision (sec. 42) imposing upon candidates the payment of specific fees, varying with the offices, for the expenses of holding the primary election, the payment of which is required as a condition of becoming a candidate, because such provision makes an arbitrary, capricious, and unreasonable classification of candidates in providing that persons who are able to pay the prescribed fees may enter the primary, while other men who are equally capable and worthy are excluded because of their pecuniary inability to pay the prescribed fees.  Such a law is unreasonable because the classification is arbitrary and oppressive.    (*Post, pp.* 609-612.)

Acts cited and construed:  Acts 1909, ch. 102, sec. 42.

Cases cited and approved:  People v. Williams, 145 Ill., 573; People, ex rel., v. Breckon, 221 Ill., 9; Johnson v. Grand Forks Co., 16 N. D., 363.

**8. SAME.** Whole act is unconstitutional where its unconstitutional parts cannot be elided or exscinded.

The constitutional infirmities in the compulsory primary election law (Acts 1909, ch. 102), pointed out in the last three headnotes (5, 6, and 7), go to its integrity, and no process of elision or excision can be applied which will rescue and preserve the remainder of the act, and so the whole act is unconstitutional and void. (*Post, p.* 612.)

Acts cited and construed: Acts 1909, ch. 102.

**9. SAME.** State legislature has all power, except as limited by the State and federal constitutions; while congress has no power except that conferred by the federal constitution.

It is fundamental and axiomatic that a State legislature is the reservoir of all of the reserved power of the people, except as it may be limited and circumscribed by the State and federal constitutions; and the lawmaking power of the State recognizes no restraints and is bound by none except such as are imposed by said constitutions. The reverse is true of the federal congress, which can only exercise such power as is expressly or impliedly conferred by the constitution of the United States. (*Post, pp.* 588-590.)

**10. SAME.** Election and suffrage clauses of the constitution do not apply to municipal elections.

Municipal elections are not within the meaning of the election and suffrage clauses of the constitution, which apply to elections referred to in that instrument and to such offices as may be created by the legislature. It has never been supposed that these clauses applied to municipal corporations, since it has been the practice of the legislature to permit owners of real estate situated within the corporate limits to vote in municipal elections, independent of their place of residence or other qualifications. (*Post, pp.* 597-600.)

Code cited and construed: Sec. 1952 (S.); sec. 1634 (M. & V.); secs. 1352, 1369 (T. & S. and 1858).

Ledgerwood v. Pitts.

Acts cited and construed: Acts 1875, ch. 92, sec. 10; Acts 1881, ch. 127; Acts 1883, ch. 114, sec. 11; Acts 1885, ch. 82, sec. 6.

Constitution cited and construed: Art. 1, sec. 5; art. 4, sec. 1.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

JAMES C. BRADFORD, VERTREES & VERTREES, and D. B. PURYEAR, for complainants.

CHARLES T. CATES, JR., PITTS & M'CONNICO, and TILLMAN & McCALL, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The fundamental question presented on this record is in respect of the constitutionality of chapter 102 of the Acts of 1909, popularly known as the "Primary Election Law." The bill was exhibited by complainants, as citizens and taxpayers of the State, against the members of the State Democratic and Republican

boards of primary election commissioners, for the pur-
pose of enjoining defendant commissioners from exer-
cising their functions and having their salaries and ex-
penses incurred by them in the execution of the act
paid out of the funds of the State, on the ground that
the act creating said boards is unconstitutional and
void; and in the alternative, assuming said act to be
valid, it is charged that commissioners were illegally
elected or appointed.   The complainants prayed for
writs of injunction restraining the defendants from
executing, or attempting to execute, said act, and for
a decree declaring said act void and the election of
defendants unlawful.   The defendant commissioners
demurred to the bill, assigning fifteen specifications, all
of which were overruled by the chancellor, the act ad-
judged unconstitutional, and an injunction granted re-
straining the commissioners from incurring any ex-
pense in the exercise of the powers or in the perform-
ance of the duties conferred upon them by said act.
The defendants appealed, and have assigned the action
of the chancellor for error.

The act in question is entitled "An act to establish
a compulsory system of legalized primary law for po-
litical nominations, to create the agencies for its op-
eration and penalize its violation." It is conceded
that the act in its particular operation applies only
to two of the political parties in the State—the Demo-
cratic and Republican—though by its terms it embraces
all political parties which cast more than 10 per cent

Ledgerwood v. Pitts.

of the entire vote of the State at the general November election next preceding the primary therein directed to be held.

"Section 1.   That excepting the offices of judges of the supreme court of the State and judges of the court of civil appeals, chancellors, criminal and circuit judges and attorneys-general, all party nominations of candidates hereafter in this State made for offices— county, State, and congressional—elective by the electors of the State, or for offices created by the constitution of the State, elective by the general assembly in joint session, shall be made in and by a primary election held for each political party, in the manner, at the times, and under the requirements prescribed by this act; and unless this act is complied with party nominations falling within the terms of the same shall not be placed upon the official ballots provided for by the laws of the State for general elections; provided, however, that this act shall not apply to non-partisan candidates or to persons desiring to become candidates independent of party nominations; nor to persons of any other party affiliation which did not, at the general November election next preceding the primary, cast more than ten (10) per cent of the entire vote in the State; and, provided, also, that this act, as to nominations for county officers other than legislative members, county executive committeemen, and delegates to State conventions, to be chosen as hereafter directed, shall not apply, when a county executive committee of the party

122  Tenn—37

it represents not less than forty days prior to the first Monday of April designated by this act, as the date of the first and recurring biennial primary elections, shall have provided for nominations for such county officers by some other legal method than that prescribed by this act; but this proviso shall not relieve the county executive committees from the performance of such duties as may be otherwise prescribed by this act.

"Sec. 2. That the representative civil district and ward committeemen of the political parties of the State falling within this act, who shall compose, as hereinafter prescribed, the county executive committee of a party and delegates of political parties to the State convention, hereinafter provided for, shall be elected in and by the said primary elections.

"Sec. 3. That commencing on the first Saturday in April, 1910, and biennially thereafter on said day, there shall be held a primary election for nominations for party candidates, ward and civil district committeemen of the county, and delegates to the State convention herein provided for; but in case a second primary should become necessary under the subsequent provisions of this act, the same shall be held on the fourth Saturday following the date of the original or first primary heretobefore directed."

Section 4 provides that party nominations in the primaries are to be determined by a majority of the popular vote cast in said election; and if any candidate receive less than a majority, a second or "run-off" pri-

mary must be held, at which the two candidates receiving the highest number of votes cast in the first election shall contest for the nomination.

"Sec. 9. That the central or State executive committee shall call a State convention of the political party it represents, the time of holding the convention to be within a period not earlier than the twentieth nor later than the thirtieth day following the date prescribed by this act for holding the second or run-off primary, which convention shall be composed of the delegates elected in the primary hereinbefore provided.

"Said State convention shall select party presidential electors, party delegates to the national convention; formulate a party platform, if it chooses; select central or State executive committeemen in the manner and upon the basis hereinbefore prescribed; declare nominations certified to it as prescribed by this act; determine contests over party nominations; pass upon questions involving the rights of delegates to sit in the convention, and exercise such other powers as may be necessary to the execution of its functions and the enforcement of this act, but not so as to impair or violate the directions, restrictions or limitations of the same."

Section 17, subsec. 7, invests the election officers with all the powers, duties, and privileges of election officers acting under the general election laws of the State, and are subjected to the same penalties for any act or deed declared by the general laws of the State as an offense in the case of the officers of regular State elections.

Sections 20, 21, and 22 prescribe the qualifications of those who participate in the primaries.

Section 20 provides: "That no person shall be eligible to vote in the primaries provided for by this act, who shall not, at the time of the same, be qualified to vote in the next general election held under the laws of the State."

"Subsection 1. Each voter, before voting in the primary, shall produce the evidence required by the general laws of the State that he has paid the poll tax imposed upon him by law for the year next preceding the primary election; and also to establish if the registration law prevails in his voting precinct, that he has been duly registered in the same manner as in a general election under the laws of the State."

Section 21 provides that the electors in the primary shall vote in their districts, as required by the general laws of the State.

"Sec. 22. That it shall be unlawful for any voter in said primary to vote in the same, except with the party of his political affiliation; but this provision shall not apply so as to prevent any voter from changing his political affiliation by an open declaration to that effect made at the time he casts his vote to the judges of the primary, which change shall, by the clerks, be noted on the poll lists."

This section also makes provision for challenging voters and for keeping poll lists and tally sheets, the certification of the counts, and returns of the vote.

Ledgerwood v. Pitts.

Section 23 provides that one set of poll lists and tally sheets are to be sealed and addressed to the county court clerk and another set to the State board of primary election commissioners. Penalties are then prescribed for the punishment of any officer of election who is guilty of violating the requirements of the act.

Section 24 provides for the enforcement of the Dortch law or Australian ballot system wherever it applies to general elections.

The act in question also provides for the election of two primary election boards, prescribes the manner of their election, and defines their duties as follows:

"Sec. 10.    That there shall be, and is by this act, created two primary election boards in and for the State of Tennessee, composed of three members each, and to be known respectively as the 'Democratic State board of primary election commissioners' and the 'Republican State board of primary election commissioners,' which said boards shall have and exercise the powers conferred and perform the duties prescribed by this act.

"Sec. 11.    That the respective members of said State boards shall be elected by the vote of the general assembly in joint session prior to the first Monday of April, 1909, at a date fixed by joint resolution of said body; and thereafter by joint vote of the general assembly during each biennial session of the same there shall be elected one member of each of said boards on such date prior to the said first Monday of April as

may be fixed, by the joint resolution of both houses
or said body.

"Sec. 12. That the terms of office of the respective
members of said boards first elected as hereinbefore
provided shall be for two (2), four (4), and six (6)
years, respectively, from the first Monday of April,
1909; the time of each member of the first elected board
to be fixed when he is elected by the joint vote of the
general assembly as hereinbefore provided; and there-
after the term of the members elected at each recurring
biennial session of the general assembly shall be for
six (6) years, and the members of said boards shall
continue in office until their successors are elected and
qualified.

"Sec. 13. That the members of said boards elected
in the first election herein provided for and in succeed-
ing elections or appointed to fill any vacancy shall be ·
bona fide members of the political party which they are
elected or appointed to represent.

"Sec. 14. That the vacancies occurring while the
general assembly is in session shall be filled by the
joint vote of the general assembly; those occurring
while the general assembly is not in session, by the
remaining members of the board in which the vacancy
arises; vacancies leaving but one member of the board
at the time, by the secretary of State, comptroller and
treasurer; provided, however, the session of the gen-
eral assembly succeeding the filling of a vacancy by ap-
pointment shall by its joint vote elect to supply the

place theretofore filled by appointment. As soon as practicable after their election, and within fifteen days, the members of said board shall respectively qualify, convene and organize by the election of a chairman and a secretary, and a majority of said board shall constitute a quorum."

"Sec. 16. That the respective members of said State boards of primary election commissioners shall receive as compensation for their services the sum of two hundred dollars ($200) each per annum, payable quarterly.

"Such other expenses as may be authorized by this act or necessarily incurred in the performance of the duties and functions prescribed shall become a State charge, to be presented by itemized statement, verified by the oath of the members, to the comptroller of the treasury, who, if the same is found correct, shall issue a comptroller's warrant therefor."

Section 26 provides that, before a candidate for the party nomination can become eligible to enter the primary or have his name placed upon the official ballot prescribed by the act, he is required to file in writing with the State board of primary election commissioners, or the county board of election commissioners, or with both, if he elect, his application to become a candidate in the primary, in which he should state his name, the office for which he desires nomination, his political affiliation, and the name of the political party whose primary he desires to enter. This application must be filed at least thirty days before the date of the first original primary.

Section 34 provides that the manner of voting is the method known as the Australian ballot or Dortch system—namely, with a cross (X) mark opposite the name of the candidate.

Section 42 provides: "That such expenses as may be necessary to hold the primary provided for by this act, and not by provisions of the same made a State or county charge, shall be paid by the political party holding the same; but such expenses may be assessed by the committee or body having charge of the declaration of nominations against the candidates seeking the primary nomination, in fair proportion; but such assessment, if it is made at such time and with such reasonable opportunity as will permit a payment by the candidates, may be declared a condition against becoming the party nominee; provided, the assessment made against a candidate shall not exceed the following sums, to wit: For a county office or legislative member from a county, not more than ten dollars ($10); senatorial and floterial representatives, not more than twenty dollars ($20) for the district; for congressional district offices, not more than fifty dollars ($50) for the district; State offices, not more than two hundred and fifty dollars ($250); and for the office of the United States senator, not more than five hundred dollars ($500); and in the event of a surplus the same shall be proportionately refunded to the candidates assessed.

"Sec. 43. That the respective counties of the State shall pay the necessary expenses incurred by county

board of election commissioners in performing the duties prescribed by this act and *per diem* at the rate of one dollar per day to each member while in the actual discharge of such duties."

It will be observed that the act provides for:

(1) Two primary election boards, composed of three members each, which are appointed by the legislature.

(2) Central or State executive committees, chosen by the State convention in the prescribed ratio of two from each congressional district.

(3) District senatorial committees, composed of two members from each county of the district, constituted of members of the county executive committee selected by that committee.

(4) District floterial committees, composed of two members from each county of the district, chosen in like manner.

(5) The county executive committee, elected by the people at the primary elections provided for in this act.

(6) State conventions, composed of delegates elected at the primary elections in the proportion of one delegate for every 100 or fraction of 50 votes or over cast in the presidential election next preceding the date of the primary election for the respective candidates for president.

We have thus endeavored to present the main features of this primary act, which is comprised in 49 sections, and embraces many details which we have

not thought it necessary to mention, but have contented ourselves with a statement of its prominent features, for the purpose of giving a general view of this legislation, and which will sufficiently illustraté the arguments which have been leveled at its constitutionality.

The first ground of constitutional objection made to the validity of this act is that a compulsory primary election is an election within the meaning of the constitution of Tennessee, and hence must be tested by the provisions of the constitution relating to elections and qualifications of voters therein prescribed. The provisions of the constitution relied on by complainants are section 5, art. 1, declaring that:

"Elections shall be free and equal and the right of suffrage as hereinafter declared shall never be denied to any person entitled thereto, except upon a conviction by a jury of some infamous crime," etc.

Section 1, art. 4, also provides that:

"Every male person of the age of twenty-one years being a citizen of the United States and a resident of this State for twelve months, and of the county wherein he may offer his vote for six months next preceding the day of election, shall be entitled to vote for members of the general assembly and civil officers for the county or district in which he resides; and there shall be no qualification attached to the right of suffrage, except that each voter shall give to the judges of the election where he offers to vote satisfactory evidence that he has paid the poll tax assessed against him for such

preceding period as the legislature shall prescribe, and at such time as may be prescribed by law, without which his vote cannot be received."

The first inquiry, therefore, presented for our examination, is whether or not these provisions of the constitution have any application at all to primary elections. Admittedly no such thing could have been in contemplation by the framers of the constitution when they came to formulate the election and suffrage clauses of that instrument, for at that time no such thing as a primary election had ever been suggested. The object of this modern invention of political parties is primarily for the purpose of permitting and requiring the entire electorate of that party to participate in the nomination of candidates for political office. The plan is simply a substitution for the caucus or convention. It is true, as stated, it is a part of the political machinery that starts the candidate on his way, and the political party is thereby enabled to crystallize and concentrate its vote on that particular candidate who is chosen as the representative and expositor possibly of their political views; but the limitations and safeguards of the constitution apply exclusively to the final election when the officer is chosen in the mode required by the constitution. Is the legislature prohibited from exerting its inherent prerogative of legislation in a matter of such salutary concern to political parties by the fact that constitutional elections are hedged about with restrictions and limitations that

are impractical when applied to the mere election of party candidates who shall be voted for in the constitutional election? It is fundamental and axiomatic that a State legislature is the reservoir of all the reserved power of the people, except as it may be limited and circumscribed by the State and federal constitutions. The reverse is true of the federal congress, which can only exercise such power as is expressly or impliedly conferred by the constitution of the United States. On this subject Mr. Cooley in Constitutional Limitations, at page 207, says:

"The lawmaking power of the State recognizes no restraints and is bound by none except such as are imposed by the constitution. That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity, and is therefore the paramount law. Its object is not to grant legislative power, but to confine and restrain it."

The power of the legislature to pass a compulsory primary law arose in the case of *Kenneweg* v. *Allegany County*, reported in 102 Md., 122, 62 Atl., 250, wherein Chief Justice McSherry, in delivering the opinion of the court, said in part as follows:

"Had the general assembly the power to adopt the act of 1904 (chapter 508)? In a word, is the act in conflict with any provision of the State or the federal constitution? The act is an act amendatory of the public's local laws of Allegany county, and relates exclusively to the holding of primary elections in that

Ledgerwood v. Pitts.

county by the two leading political parties for the selection of candidates to be voted for at ensuing State and congressional elections.    It places safeguards around and gives legal sanction to these primary contests.    It prescribes how nominations are to be made by popular vote, how and upon what conditions candidates may enter those contests, and in what manner and at what times the votes cast thereat shall be counted and certified. . . .    Enough has been said to indicate the character, the scope, and the object, but not the minute provisions, of this legislation; and we now repeat the question.  Had the general assembly the power to adopt it?  The general assembly possesses all legislative power and authority except in such instances and to such extent as the constitution of the State and of the United States have imposed limitations and restraints thereon.    In this respect the legislature differs from the congress of the United States, which has and can exercise only such power as the federal constitution, expressly or by necessary implication, confers upon it.    In the general assembly plenary power to legislate is vested unless restrained by the constitution.    In the congress the power to legislate is not vested unless conferred by the federal constitution.    In the State constitution we look, not for the power of the general assembly to adopt an enactment, but for a prohibition against its adoption.    In the federal constitution we look, not for the prohibition, but for the delegated power to enact a measure.

The general assembly being, then, the depository of all legislative power except when restrained by the organic law, it follows that it is clothed with full power to enact a primary election law, if there is no provision in the constitution depriving it of that authority. There is no such provision to be found in the constitution of the State."

In *Hanna* v. *Young*, 84 Md., 179, 35 Atl., 674, 34 L. R. A., 55, 57 Am. St. Rep., 396, it was held:

"The word 'election,' in the suffrage clause of a constitution providing that every male citizen of the United States of the age of 21 years and upwards, who has been a resident of the State for one year, etc., shall be entitled to vote at 'all elections,' includes one of those elections which the constitution itself requires to be held, or those which it has directed the legislature to provide for."

In *Montgomery* v. *Chelf*, 118 Ky., 766, 82 S. W., 388, the constitutionality of the Kentucky primary law was assaulted, but the court of appeals of that State held that the constitutional provisions in relation to elections had no application to primary elections for the selection of party candidates. The court said:

"That section of the constitution has no reference to primary elections, but applies only to general elections. . . . The constitution nowhere makes provision for holding primaries. Therefore, if the word 'election,' as used in the constitution includes primary elections, the constitution effectually prohibits the holding of primary elections at all."

Ledgerwood v. Pitts.

In *State, ex rel.*, v. *Swanger*, 212 Mo., 472, 111 S. W., 7, the supreme court of that State upheld the validity of the State primary law.

In *State, ex rel.*, v. *Jensen*, 86 Minn., 19, 89 N. W., 1126, the compulsory primary law of the State of Minnesota was upheld. The act in question was made applicable to political parties holding more than ten per cent of the total vote. On this subject the court said:

"We are of the opinion that the legislature may classify political parties with reference to difference in party conditions and numerical strength, and prescribe how each class shall select its candidates. . . . While it seems to some of us that the percentage of the votes selected as the basis of the classification in this act is larger than necessary, yet it was a question for the legislature, and we are not justified in holding that the classification was arbitrary."

In *People* v. *Democratic General Committee of Kings County*, 164 N. Y., 335, 58 N. E., 124, 51 L. R. A., 674, one feature of the State primary law of New York was before the court of appeals of that State. Chief Justice Parker, in approving the statute, used this language:

"The dominant idea pervading the entire statute is the absolute assurance to the citizens that his wish as to the conduct of the affairs of his party may be expressed through his ballot, and thus given effect, whether it be in accord with the wishes of the leaders of his party or not, and that thus shall be put in ef-

fective operation, in the primaries, the underlying principle of democracy which makes the will of an unfettered majority controlling. In other words, the scheme is to permit the voters to construct the organization from the bottom upward, instead of permitting the leaders to construct it from the top downward."

In *State* v. *Felton,* 77 Ohio St., 554, 84 N. E., 85, 12 Am. and Eng. Ann. Cas., 65, the supreme court of Ohio had under consideration the primary election law of that State. The suffrage clause of the constitution of that State provided that "every male citizen of the United States of the age of twenty-one years who shall have been a resident of the State one year next preceding the election, and of the county, township or ward in which he resides such time as may be provided by law, shall have the qualifications of an elector and be entitled to vote at all elections." It was argued that the State primary law superadded qualifications to those prescribed by the constitution, in that it required that the elector should have voted with the political party holding such primary at the last general election. The court on this subject said:

"If this construction is sound, then every elector has the constitutional right to vote at the primary election of every party. If the election is one at which merely the candidates of a party are to be selected, it cannot be an objection that electors who do not belong to that party are not permitted to take part. That was one of the evils that the legislature was intended to prevent,

and as to the test for determining an elector's partisanship it is impossible to conceive of a political party without the possession by its members of some qualifications, and the test prescribed by the statute is the usual one and is not unreasonable. But a primary election held merely to name the candidates of a political party is not an election within the meaning of this section of the constitution. That section refers to the nomination of candidates."

The following excerpt from said opinion is pertinent:

"The national and State governments in the manner of their operation are quite different from what was contemplated in their organization. Political parties were not thought of, but so potent have they become in determining the measures and in administering the affairs of government that they are regarded as inseparable from, if not essential to, a republican form of government. In his 'The American Commonwealth,' Mr. Bryce says: 'In America the great moving forces are the parties. . . . The spirit and force of party has in America been as essential to the action of the machinery of government as steam is to a locomotive engine; or, to vary the simile, party association, and organization are to the organs of government almost what the motor nerves are to the muscles, sinews, and bones of the human body. They transmit the motive power, they determine the directions in which the organs act. A description of them is therefore a necessary complement to an account of the constitution and

122 Tenn—38

government; for it is into the hands of the parties that the workings of the government has fallen. Their ingenuity, stimulated by incessant rivalry, has turned many provisions of the constitution to unforeseen uses, and given to the legal institutions of the country no small part of their present color.' "

In *State* v. *Michel*, 121 La., 374, 46 South., 430, the court, in affirming the primary election law of that State, held that provisions requiring the State to pay part of the expenses of primary elections was valid; that provisions requiring voters to promise that they will support the nominees were valid; that provisions declaring their affiliations with the party holding the primary were valid; that provisions defining a political party to be one that shall cast at least 10 per cent of the votes cast for governor at the last preceding election were valid, etc.

The right of the legislature to require that nominations shall be by primary and to prescribe additional qualifications for the voters participating in same has been recognized by the weight of authority in the States of the Union. *Runge* v. *Anderson*, 100 Wis., 533, 76 N. W., 482, 42 L. R. A., 239; *State, ex rel. McCarthy*, v. *Moore*, 87 Minn., 308, 92 N. W., 4, 59 L. R. A., 447, 94 Am. St. Rep., 702; *State* v. *Drexel*, 74 Neb., 776, 105 N. W., 174; *Hopper* v. *Stack*, 69 N. J. Law, 562, 56 Atl., 1; *Coffey* v. *Dem. Gen. Com.*, 164 N. Y., 335, 58 N. E., 124; *Healey et al.* v. *Wipf* (S. D.), 117 N. W., 521; *Griffin* v. *Gesner*, 78 Kan., 669, 97 Pac., 794; *Walling* v.

*Lansdon,* 15 Idaho, 282, 97 Pac., 396; *State* v. *Nichols,* 50 Wash., 508, 97 Pac., 728.     In a note to *People* v. *Board of Election Commissioners,* 5 Am. and Eng. Ann. Cas., 568, the learned annotator says: "The weight of authority is to the effect that State legislatures have the general power to pass reasonable primary election laws, citing authorities."

Again, in a note to *State* v. *Felton,* 12 Am. and Eng. Ann. Cas., 73, the annotator again states that it is undoubtedly the general rule that State legislatures have the inherent power to pass reasonable primary election laws, citing many additional cases.

An examination of many of these cases has disclosed the fact that they are bottomed on two propositions, namely: (1) That such primaries are not in reality elections, but merely nominating devices; and (2) that they are valuable auxiliaries for the promotion of good government and are regulated by legislative enactment for the public welfare.

As against the array of authorities to the contrary, counsel cites the following cases, which hold that compulsory primary elections are "elections" within the purview of the constitution, and that the qualifications for voters in the primaries must be the same as the constitution of the State prescribes. *Johnson* v. *Grand Forks Co.,* 16 N. D., 363, 113 N. W., 1071, 125 Am. St. Rep., 662; *Spier* v. *Baker,* 120 Cal., 370, 52 Pac., 659, 41 L. R. A., 196; *State, ex rel.,* v. *State Board of Canvassers,* 78 S. C., 461, 59 S. E., 145, 14 L. R. A. (N. S.),

850, 13 Am. and Eng. Ann. Cas., 1133; *People* v. *Board of Commissioners*, 221 Ill., 9, 77 N. E., 321, 5 Am. and Eng. Ann. Cas., 562.

We do not subscribe to the reasoning of these cases, and, moreover, they are opposed to the great weight of authority.

When we recur to the election and suffrage clauses of the constitution of Tennessee, we find the first declaration in section 5, article 1, *viz.*: "That elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto," etc.

Thereinafter this "right of suffrage" is declared, in section 1 of article 4, in these words:

"Every male person of the age of twenty-one years, being a citizen of the United States, and a resident of this State for twelve months, and of the county wherein he may offer his vote for six months, next preceding the day of election, shall be entitled to vote for members of the general assembly and other civil officers for the county or district in which he resides."

The constitution in other places provides for the election of State officers and certain county officers, prescribing the mode of selection and term of service. Most of the officers provided for are to be chosen by the qualified voters of the State, districts, and counties, but some by appointment of the governor, some by the courts, and some by the vote of the general assembly.

It is very obvious, we think, that the suffrage clause of the constitution applies to elections referred to in

that instrument and to such offices as may be created
by the legislature, and these elections "shall be free
and equal," and this right of suffrage, so defined, shall
never be denied.  It has never been supposed that the
election and suffrage clause of the constitution applied
to municipal corporations since it has been the prac-
tice of the legislature since the adoption of the con-
stitution of 1870 to permit owners of real estate sit-
uated within the corporate limits to vote in a munici-
pal election, independent of his place of residence or
other qualifications.

The general act of 1875 (chapter 92) providing for
the organization and regulation of municipal corpora-
tions, in its tenth section, carried into Shannon's Code
at section 1952, provided (to quote the Code) :

"All persons owning real estate [and] all persons
living therein, and who have been residents thereof for
six months previous to said election and who are en-
titled to vote for members of the general assembly, shall
be entitled to vote in said election."

This is expressed in the act by a *proviso* in these
words:

"Provided, however, that all persons living outside
of municipal corporations, but owning property in the
same, shall be entitled to vote in elections holden in
such corporations."

The taxing district acts of 1881 (chapter 127) and
1885 (chapter 82) contain substantially the same pro-
visions as to elections in such districts of commission-
ers and other district officers.

And the present charter of the city of Nashville (McAlister & Smith's Laws of Nashville, p. 42, sec. 11 of Acts 1883, ch. 114), contains this provision:

"Nonresidents who shall have owned a taxable freehold in said city for six months previous to said day of election, and being qualified to vote for members of the general assembly by the laws of the State, shall be entitled to vote in the ward in which the said freehold is situated."

While this question has never been adjudicated in this State by any reported decision of which we are apprised, the practice of the legislature has been unchallenged. The question has arisen in other jurisdictions, and the constitutional provisions uniformly held not applicable to elections in a municipal corporation.

In Cyc., vol. 15, p. 303, it is said:

"A general law in regard to the registration of electors does not always apply to municipal and other local elections. It depends entirely upon whether there is anything in express terms or by necessary implication in the constitution or statute making the registration for such election necessary; in other words, it is a matter of constitutional or statutory construction."

In *State* v. *Dillon*, 32 Fla., 545, 14 South., 383, 22 L. R. A., 124, it was held that the suffrage provision of the Florida constitution, which was very similar to that of the constitution of Maryland—that is, to the effect that persons possessing the prescribed qualifications should be entitled to vote in "all elections"—did

not apply to the election of municipal officers, but that "such elections are subject to statutory regulations and that it is competent for the legislature to prescribe the qualifications of voters at the same."

In *Mayor* v. *Shattuck*, 19 Colo., 104, 34 Pac., 947, 41 Am. St. Rep., 208, the question was upon the validity of an act providing for the annexation or consolidation of contiguous towns or cities and for the submission of the question of dissolution and annexation "to a vote of such of the qualified electors of such town or city (to be annexed) as have in the year next preceding paid a property tax therein."

The suffrage clause of the constitution was:

"Every male person over the age of twenty-one years, possessing the following qualifications, shall be entitled to vote at all elections."

The qualifications then set out did not embrace the ownership of property or the payment of taxes. The court, in sustaining the act, said:

"It is manifest that some restrictions must be placed upon the phrase 'all elections,' as used in section 1 (of the constitution), else every person having the qualifications therein prescribed might insist upon voting at every election, private as well as public, and thus interfere with affairs of others in which he has no interest or concern.

"In our opinion the word 'elections' thus used does not have its general or comprehensive significance, including all acts of voting, choice or selection without

limitation, but is used in a more restricted, political sense—as elections of public officers." *Buckner* v. *Gordon*, 81 Ky., 665; *Wills* v. *Kalmbach*, 109 Va., 475, 64 S. E., 342, 21 L. R. A. (N. S.), 1009.

If these municipal elections are not within the meaning of the election and suffrage clauses of the constitution, it is difficult to perceive why a primary election which is not mentioned in that instrument, and wherein no officers are elected, but only nominated, should be included. It has already been shown that a large majority of the States of the Union have on their statute books primary election laws, some optional, some compulsory, some limited, but all exerting in some form or other legislative direction and control over party nominations and party machinery. The justifications for such laws is well stated in Cyc., vol. 15, p. 332:

"The legislature may recognize the existence of political parties and within reasonable limits regulate the means by which partisan efforts shall be protected in exercising individual preferences for party candidates, and this," the authors said, "is the general purpose of primary election laws, which are designed to secure to individual voters a free expression of their will."

The statute books of this State will show that commencing with chapter 407, Acts 1899, the general assembly has enacted several voluntary primary election laws. The last was passed on April 17, 1901, and ap-

proved by Gov. McMillan on the same day, being chapter 39, Acts 1901. It is probable that this act superseded all prior laws on the same subject. It is true the act is not compulsory and is only utilized "whenever it shall be desired by the committee of governing authority of any political party to hold a primary election" is the language of the act. This act applied to both State and congressional elections and regulates with much detail party procedure in making political nominations. This act was before the court at the April term, 1907, at Jackson, in the case of *Whalen et al.* v. *State* (no opinion filed). Whalen and others, who were judges and clerks in a congressional primary held in Shelby county, were convicted in the lower court of stuffing the ballot box in violation of the provisions of that act. The conviction was upheld by this court and the judgment of the lower court affirmed. We are therefore of opinion, without further elaboration, that chapter 102, Acts 1909, is not obnoxious to the suffrage and election provisions of the constitution of the State, and was an act within the competency of the legislature to pass, other constitutional objections out of the way.

The next insistence is that several of the provisions of the act violate the inhibitions of the constitution against special and partial laws, in that its classifications are unreasonable, arbitrary, and capricious. Under this head the first specification is that section 1 of the act excludes from its benefits political parties cast-

ing less than 10 per cent of the entire vote of the State at the preceding November election. It is said it is against public policy to deny the benefits and advantages of political organizations under compulsory primary laws to every tenth voter, to 10 per cent of all those who vote, and that it is an arbitrary and unreasonable denial of equal political rights to the members of the small excluded parties.

It is further said that, if organization by law and primary elections are good for strong parties and tend to promote the welfare of the government, like organizations and primaries are good for weak parties. Counsel cites in support of this assignment *Britton* v. *Board of Election Commissioners,* 129 Cal., 337, 61 Pac., 1115, 51 L. R. A., 116. This case from California is the only case cited by counsel in support of his proposition. As we have already seen, California is one of the few States which hold that a compulsory primary law forms a part of the general election laws of the State and is governed by all constitutional limitations in regard to the right of suffrage. *Spier* v. *Baker,* 120 Cal., 370, 52 Pac., 659, 41 L. R. A., 196. This is really the basis of the opinion in *Britton* v. *Board of Election Commissioners,* supra. In the latter case stress is also laid on the fact that the act before that court prohibited the minor political parties excluded from the benefits of the act from holding a nominating convention, and hence violated the constitution of California, which secured to all citizens "the right to freely assemble to-

gether to consult for the common good," etc.   Said the court:

"For the effect of the act here under consideration is not only to discriminate between political parties and the members thereof, but absolutely to work the disfranchisement of voters, or to compel them, if they vote at all, to vote for representatives of political parties other than that to which they belong.   The deprivation of the right of selection is a deprivation of the right of franchise."

The act now under review is amenable to no such criticism.   Under the Tennessee act minor political parties are not prohibited from making nominations in any manner deemed most expedient, nor are they deprived of the privilege of having the names of their candidates printed on the official ballots voted in the election.   It is true they may not have their candidates nominated under this act, for the act is inapplicable to them, and unless the legislature could make no classification whatever, and must provide a primary board for any number of individuals, no matter how few, calling themselves a political party, there has been no vicious and invidious class legislation in this provision of the act.   This question has frequently been decided adversely to complainants' contention.   In *Kenneweg* v. *Allegany County*, 102 Md., 128, 62 Atl., 252, it was said of this objection to the primary law of Maryland, *viz.*:

"The circumstance that the act applies only to two of the political parties does (not) affect its validity.

The general assembly has the power to pass an act regulating the primaries of one party alone, if it sees fit; and if for reasons satisfactory to the legislative branch of the government it is desirable that only the numerically stronger parties should be brought under the provisions of a primary election law which has to do merely with the selection of candidates to be voted for, and is in no way concerned with the elective franchise, it is not the province of the courts to declare the measure invalid simply because other political parties polling a few scattering votes are not included within the enactment."

In *State* v. *Felton,* 77 Ohio St., 572, 84 N. E., 88, the court in dealing with this feature of the Ohio primary law, said:

"One man cannot constitute a political party, and the abuses the law was intended to prevent depend largely upon the number of those who constitute the party, and this makes it perfectly proper for the legislature to limit the application of the law according to number." *State* v. *Poston,* 58 Ohio St., 620, 51 N. E., 150, 42 L. R. A., 237; *Gentsch* v. *State,* 71 Ohio St., 151, 72 N. E., 900; *DeWatt* v. *Bartley,* 146 Pa., 529, 24 Atl., 185, 15 L. R. A., 771, 28 Am. St. Rep., 814; *State* v. *Black,* 54 N. J. Law, 446, 24 Atl., 489, 1021, 16 L. R. A., 769; *State* v. *Anderson,* 100 Wis., 523, 76 N. W., 482, 42 L. R. A., 239; *Miner* v. *Olin,* 159 Mass., 487, 34 N. E., 721; *Corcoran* v. *Bennett,* 20 R. I., 6, 36 Atl., 1122; *Ladd* v. *Holmes,* 40 Or., 167, 66 Pac., 714, 91 Am. St. Rep., 457.

Ledgerwood v. Pitts.

We come now to some features of the act that present more difficulty.

It is next insisted that the act is unconstitutional for the reason it excluded the nomination of candidates for judicial offices and that after making this classification it then includes county judges. It is said this fact renders the classification arbitrary and capricious. If it be conceded that the legislature in the classification of candidates for political nominations in a primary election might lawfully exclude the judiciary, no reason is perceived why county judges, as members of the State judiciary, should not also be excluded. As already seen, the act provides for nominations by primary election of all party candidates for all State and county offices elected by the people excepting the judges of the supreme court, court of appeals, circuit, criminal, and chancery courts, and attorneys-general. It will be observed that in excepting the judiciary all the courts are mentioned except the judges of the county court. The objection is twofold: First, that it was an arbitrary and unreasonable classification to exclude the judiciary at all; but, second, if it was a reasonable and lawful exclusion, all the members of the class should have been excluded, and county judges should not have been excepted from the exclusion. The general rule on this subject was thus formulated in *Stratton Claimants* v. *Morris Claimants,* 89 Tenn., 497, 15 S. W., 87, 12 L. R. A., 70: "Whether a statute be public or private, general or specific, in form, if it attempts to create dis-

tinctions and classifications between the citizens of this State, the basis of such classification must be natural and not arbitrary. If the classification is made under article 11, section 8, of the constitution, for the purpose of conferring upon a class the benefit of some special right, privilege, or immunity or exemption, there must be some good and valid reason why that particular class should alone be the recipient of the benefit. If the classification is made under article 1, section 8, of the constitution, for the purpose of subjecting a class to the burden of some special disability, duty, or obligation, there must be some good and valid reason why that particular class should alone be subject to that burden." If it be conceded, for the sake of argument, that the exclusion of the judiciary from the operation of a primary law enacted alone for political nominations was reasonable, then the entire judiciary must be excluded, and the exception of county judges was arbitrary and unreasonable. No valid reason can be suggested why county judges should not have been included in the exception excluding the judiciary. It is said, however, in opposition to this view that "county judges are not in any proper or essential sense judicial officers, . . . but their chief functions are simply those of financial agent of the county and chairman of the county court. They are county officers in as full and complete sense as sheriffs or trustees." It has been repeatedly held by this court that "the county judge is a member of the State judiciary, and none the

less so because certain special duties are annexed to his office, which, were they the whole of his duties, might constitute him a mere county officer." *State, ex rel.*, v. *Glenn,* 7 Heisk., 472; *State* v. *Maloney,* 92 Tenn., 68, 20 S. W., 419; *State* v. *McKee,* 8 Lea, 24; *State* v. *Leonard,* 86 Tenn., 485, 7 S. W., 453; *Johnson* v. *Brice,* 112 Tenn., 59, 83 S. W., 791.

It is said there was no valid reason for excluding the judiciary and attorneys general from the purview of the act. It has always been the policy of the State to separate the election of judges from the election of purely political officers. Prior to the adoption of the constitution of 1870 the judges were selected at the March election, while the governor and members of the general assembly were chosen at the August election. Under the constitution of 1870 the judges are required to be elected at the August election, while political officers are chosen at the November election. It was doubtless for the purpose of conforming to this policy of the State, as shown by the history of legislation on this subject, that the framers of this act excluded the judges.

We are of opinion there was a valid reason for the classification and exclusion of the judiciary from this act. The same may be said in respect to attorneys-general or district attorneys, who have always been recognized, and are, in fact, a part of the judiciary. We are of opinion, however, that the exclusion of county judges, probate judges, and special common-law courts

and judges from this classification was arbitrary and capricious. If it was a reasonable classification to exclude the judiciary, then all the members of this branch of the public service should have been excluded. The legislature could not exclude a part and leave a part to be chosen in the primary. This is unquestionably the effect of the act.

It is next insisted that the body of this act is broader than its title and violates the two-subject clause of the constitution. Article 2, section 17, provides: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title." The title of the act under review is: "An act to establish a compulsory system of legalized primary law, for political nominations, to create the agencies for its operation and penalize its violation." The object of this bill, as indicated by its title, is: "To provide for the nomination of political candidates by compulsory primary elections, and create the agencies for its operation," etc. The body of the act has provided an elaborate plan for the nomination of party candidates by compulsory elections, and it has also provided agencies and instrumentalities for effectuating the system therein devised. All this is proper and germane to the main object expressed in the title. But in the ninth section of the act a subject is introduced which is wholly foreign to the title. It provides:

"1. For the holding of State conventions to—(a) select party presidential electors; (b) select party

delegates to national conventions; and (c) formulate platforms, if they choose." Act, sec. 9.

Applying to the act the most liberal and latitudinarian construction, we fail to perceive wherein the holding of State conventions to select presidential electors and delegates to national conventions has any connection with the nomination of party candidates by popular primary election.

It is true the State convention is composed of the delegates chosen in the primaries, and one of the duties of the State convention is to declare nominations of State officers certified to it, as prescribed by the act, and it is said that the other things which the convention may do are things which such conventions always had the power to do. This position does not at all affect the proposition that the selection of presidential electors and delegates to the national convention has no sort of relevancy to the nomination of political candidates by popular primary election, the subject expressed in the title. Hence we are clearly of opinion that in this respect the body of the act is broader than the title. *Dixon* v. *State*, 117 Tenn., 81, 94 S. W., 936.

It is next insisted that the assessment of candidates for expenses of holding the primary election is unconstitutional and void. Section 42 of the act provides that the expense of holding the primary may be assessed against the candidates in fair proportion, and payment of the assessment may be declared a condition against becoming the party nominee. The whole has

heretofore been set out, and the features above mentioned appear in the section. It is further provided that assessments against a candidate shall not exceed the following sums, to wit:

"For a county office or legislative member, from a county, not more than ten dollars ($10); senatorial and floterial representatives, not more than twenty dollars ($20) for the district; for congressional district offices, not more than fifty dollars ($50) for the district; State offices, not more than two hundred and fifty dollars ($250); and for the office of United States senator, not more than five hundred dollars ($500); and in the event of a surplus, the same shall be proportionately refunded to the candidates assessed."

The authority of the legislature to make such assessments against individuals as a condition of becoming a candidate for public office has frequently arisen in the courts. In *People, ex rel., v. Breckon,* 221 Ill., 9, 77 N. E., 321, 5 Am. and Eng. Ann. Cas., 562, the court, in dealing with this question, said:

"Other provisions of the act require a cash payment from persons desiring to become candidates for certain offices. It is provided that any one desiring to become a candidate for governor or United States senator, shall pay on filing a petition of legal voters a filing fee of $100. Each congressional candidate must make a payment of $100; each candidate for senator $50; each candidate for member of the house of representatives $25; and in Cook county a candidate for mayor must

Ledgerwood v. Pitts.

pay $75, and a candidate for alderman $25. These pay ments bear no relation to the services rendered in filing the papers, or the expenses of the election. They are purely arbitrary exactions of money, to be paid in the public treasuries as a monetary consideration for being permitted to be a candidate. The payments are not intended as compensation for services rendered in fil- ing the papers, but the provisions make the ability and inclination of a person to pay money a test of his qual-- ification and of the right of the voters to choose him for public office. Any eligible person has a right to be a candidate for a public office .without being subject to arbitrary or unreasonable burdens. The voters have a right to choose any eligible person, and he owes a duty to the public to qualify and serve. *People* v. *Williams,* 145 Ill., 573 [33 N. E., 849, 24 L. R. A., 492, 36 Am. St. Rep., 514]. . . . But there can be no discrim- ination between candidates based upon the ground that one has money to pay for the privilege of being a can- didate and chooses to pay, and another has not the means or is unwilling to buy the privilege. . . . The provisions by which the candidates are required to buy their way to office are an unwarranted hindrance and impediment to the rights of the candidates and voters alike, and are illegal and void."

See, also, *Johnson* v. *Grand Forks County,* 16 N. D., 363, 113 N. W., 1071, 125 Am. St. Rep., 662.

We think this section is unconstitutional for the rea- son it makes an arbitrary, capricious, and unreasonable

classification of candidates in providing that persons who are able to pay the prescribed fees may enter the primary, while other men who are equally capable and worthy are excluded because of their pecuniary inability to pay the prescribed fee. Such a law is unreasonable because the classification is arbitrary and oppressive.

The constitutional infirmities pointed out in this act go to its integrity, and no process of elision or excision can be applied which will rescue and preserve the remainder of the act. It results that for the reasons stated the act must be adjudged unconstitutional and void, and the decree of the chancellor is affirmed.